**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SCOTTY D. FULTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. CIV-10-1389-HE |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Scotty D. Fulton, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

Mr. Fulton filed his applications for DIB and SSI on August 18, 2005, alleging an onset date of January 1, 2003.[1] The Social Security Administration denied his applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ)

---

[1] Mr. Fulton had sought benefits in two previous applications. According to the ALJ, the second application was dismissed on December 27, 2004. Mr. Fulton was insured for DIB through December 31, 2006. The period under consideration for purposes of DIB is, therefore, December 27, 2004, through December 31, 2006. The period under consideration for SSI is from the date of the most recent application through the date of the ALJ's decision.

issued an unfavorable decision which the Appeals Counsel reviewed, ultimately remanding the case for further proceedings. The ALJ held a second administrative hearing, *See* Administrative Record [Doc. #9] (AR) at 302-395. The ALJ issued the unfavorable decision currently under review on December 21, 2009. AR 16-32. The Appeals Council denied Mr. Fulton's request for review, AR 5-8, and this appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined that Mr. Fulton met the insured status requirements for DIB through December 31, 2006. AR 22. At step one, the ALJ determined that Mr. Fulton had not engaged in substantial gainful activity since the alleged onset date, January 1, 2003. AR 22.

At step two, the ALJ determined that Mr. Fulton has the following severe impairments: lumbar degenerative disc disease and stenosis, panic disorder with agoraphobia, avoidant personality disorder, and low average intellectual abilities. AR 22.

At step three, the ALJ found that Mr. Fulton's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

The ALJ next determined Mr. Fulton's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally lift and/or carry (including upward pulling) 20 pounds and frequently lift and/or carry (including upward pulling) 10 pounds. He can stand and/or walk

>   (with normal breaks) for 6 hours of an 8-hour workday and sit (with normal breaks) for six hours in an 8-hour workday. Pushing and/or pulling (including operation of hand and/or foot controls) is unlimited up to the pounds specified above. His residual functional capacity for light work is diminished by significant nonexertional limitations in that he has mental limitations as follows: He can perform simple and some complex tasks under ordinary supervision; can interact with coworkers and supervisors for incidental work purposes, but should avoid public contact; and can adapt to routine changes in a work setting.

AR 24. At step four, the ALJ concluded that Mr. Fulton is does not have the physical capacity to perform his past relevant work as nursing home housekeeper, fast food cook, roofer helper, or prep cook. AR 30.

At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Mr. Fulton could perform. Based on the testimony of the vocational expert (VE), the ALJ found that Mr. Fulton is able to perform other jobs such as apparel stock clerk, motel housekeeper, and small parts assembler. AR 31.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court

"meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Mr. Fulton contends that the ALJ erred in failing to properly assess Plaintiff's RFC, failing to properly evaluate the credibility of Mr. Fulton and his wife and in determining at step five that Mr. Fulton could perform other work.

## V. Analysis

### A. The ALJ's RFC Assessment and Credibility Analysis

#### 1. Physical RFC

The ALJ concluded that Mr. Fulton can perform the exertional requirements for light work. Mr. Fulton challenges this conclusion, based on his testimony that he can neither sit nor stand for extended periods and that he must lie down during the day to ease his back pain. Mr. Fulton's wife also testified as to her observations concerning her husband's mental and physical limitations. The ALJ's conclusion that Mr. Fulton's allegations of back pain are not credible is based on the paucity of objective medical evidence, prior to 2008, supporting Mr. Fulton's subjective allegations of lumbar pain. Both Mr. and Ms. Fulton attributed Mr.

4

Fulton's sparse medical treatment prior to 2008 to their lack of money and health insurance. The ALJ stated that Mr. Fuller "did not seek medical treatment until 2008 when his wife got him insured." AR 29. The ALJ interpreted the failure to procure on-going medical treatment before 2008 as an indication that Mr. Fulton's allegations of back pain were exaggerated.

But there are medical records prior to 2008 that demonstrate that Mr. Fulton consistently complained of back pain when he did seek medical help. Dr. Krieger recorded Mr. Fulton's complaint that he had experienced back pain "since a young age." AR 230. Dr. Krieger prescribed Arthrotec, Ultram, Effexor and Darvocet for back pain on various occasions. AR 227-230.

On July 26, 2006, Mr. Fulton was attended by Dr. Samantha Lewellen who noted tenderness of the sacroiliac joints and lower back. Mr. Fulton experienced pain with straight leg raising and radicular pain in both hips. Dr. Lewellen reported thickening of the skin on Mr. Fulton's left heel and wearing of his left shoe which she attributed to his favoring his right side when he walked. Dr. Lewellen's objective observations support Mr. Fulton's allegations of pain. AR 232.

On October 13, 2005, Dr. Frank A. Thomas examined Mr. Fulton at the request of the Agency. Dr. Thomas found that Mr. Fulton retained full range of motion with no erythema, effusion or limitation "except for his lumbar spine." Dr. Thomas found tenderness in the lateral left side near the sacroiliac joint with significant muscle spasm. He noted Mr. Fulton's complaint of worsening back pain. Dr. Thomas also noted that Mr. Fulton did not have the money to pursue a "work up" or to buy medications. AR 187.

On February 6, 2006, without benefit of an MRI or any other objective test results, an agency physician completed a physical RFC form concluding, in stark contrast with the treatment records discussed above, that Mr. Fulton's complaints of back pain were "not credible on an organic basis." AR 219. The agency physician concluded that Mr. Fulton has no exertional or postural limitations. AR 214-219. In other words, this physician concluded that Mr. Fulton could perform work requiring any exertional strength including very heavy work. There is no evidentiary proof to substantiate the conclusion that Mr. Fulton can perform work at all exertional levels.

A March 20, 2008, MRI, ordered by Dr. Krieger after Mr. Fulton obtained medical insurance, demonstrated moderate left neuroforaminal stenosis with mild to moderate right neuroforaminal stenosis, and mild left lateral recess stenosis at L5/S1, secondary to broad-based parasagittal disc protrusion and exuberant facet hypertrophy; minimal broad-based annular disc bulge at L4/5 with no significant encroachment upon the spinal canal or neuroforamin, moderate degenerative disc disease at L5/S1; and mild degenerative disc disease at L4/5. AR 269-270. On October 8, 2009, Dr. Michael R. Hahn, II, reviewed the results of the MRI and a later CT scan at the request of Mr. Fulton's treating physician. Dr. Hahn suggested that Mr. Fulton undergo an L5-S1 discogram and L5 selective nerve block on the right to be followed, perhaps, by spinal fusion. AR 271.

With regard to the medical evidence of Mr. Fulton's physical impairments, the ALJ rejects the agency consultant's opinion and bases the RFC finding on the ALJ's own interpretation of the evidence:

> Concerning the claimant's physical impairment, the Administrative Law Judge makes a different interpretation of the medical evidence [than the agency consultant did] and finds that the claimant's impairments are severe, but they do not prevent him from performing light work with the additional mental limitations.

AR 30. But there is no medical evidence in the record (other than the rejected agency opinion) that supports the ALJ's conclusion that Mr. Fulton can perform light work, and this finding is not based on substantial evidence. Reversal and remand are therefore necessary on this basis alone.

### 2. **Mental Limitations**

At step two, the ALJ found that Mr. Fulton has severe nonexertional limitations including panic disorder with agoraphobia, avoidant personality disorder, and low average intellectual abilities. AR 22. Mr. Fulton testified that his anxiety disorder prevents him from leaving his home. He testified that he is very uncomfortable around people and fearful of people. AR 362-363. He described himself as very nervous during the hearing, and the record indicates that he was observed wringing his hands and sweating. Mr. Fulton attributed this behavior and symptoms to his nervousness. AR 364. Mrs. Fulton testified that from her observations, her husband cannot be around people without getting very defensive, nervous and agitated. AR 376-379.

The ALJ further concluded that, despite mental limitations, Mr. Fulton could perform simple and some complex tasks under ordinary supervision, could interact with coworkers and supervisors for incidental work purposes and could adapt to routine changes in a work setting so long as he was able to avoid public contact.

Dr. Darrell Lynch, Ph.D., conducted a mental status examination at the request of the Agency on November 17, 2005. Dr. Lynch diagnosed Mr. Fulton with panic disorder with agoraphobia and avoidant personality disorder. AR 194.

On January 5, 2006, Dr. Karen Kendall used the psychiatric review technique (PRT) required by the Agency to assess Mr. Fulton's mental impairments, and she completed a mental RFC assessment. She determined that Mr. Fulton has low average intellectual abilities, AR 204, 212, and anxiety related impairments that cause him to have persistent irrational fear – in this case of people – resulting in a compelling desire to avoid the object of the fear. AR 205. She also indicated that Mr. Fulton has inflexible and maladaptive personality traits – in this case pathological dependence – which cause significant impairment in social or occupational functioning. AR 207. Dr. Kendall noted that Mr. Fulton has always depended on his mother or wife for money management, shopping, and cooking. AR 212. In rating the degree of Mr. Fulton's functional limitations on the PRT, Dr. Kendall found marked limitations in maintaining social functioning and moderate limitations in restrictions of activities of daily living and in maintaining concentration, persistence or pace. AR 210. The mental RFC assessment prepared by Dr. Kendall indicates Mr. Fulton is moderately limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to work in coordination with or proximity to others without being distracted by them, and the ability to respond appropriately to changes in the work setting. She determined that Mr. Fulton is markedly limited in his ability to

interact appropriately with the general public. AR 196-197. Despite the significant degree of limitations she herself assessed, Dr. Kendall nevertheless found that:

> Clmt is able to perform simple and some complex tasks under ordinary supervision. Clmt is able to interact with coworkers and supervisors for incidental work purposes but should avoid public contact. Is able to adapt to some work change.

AR 198.

The ALJ stated that he was giving great weight to the findings of the agency doctors. As Mr. Fulton points out, however, the ALJ did not adequately account for Mr. Fulton's marked limitation in social functioning in his hypothetical questions to the VE. AR 384-392. When Mr. Fulton's attorney questioned the VE regarding the effect of a marked limitation in social functioning, including interaction with coworkers and supervisors, the VE explained that unskilled work, by its nature, requires close supervision and that such a limitation would eliminate 85% – 90% of unskilled work at any exertional level. AR 393. On remand, the Commissioner should include all limitations in the hypothetical questions to the VE and determine whether there are a sufficient number of jobs available that Mr. Fulton could perform.

In sum, the Commissioner's RFC findings are not supported by substantial evidence, and it is recommended that this action be remanded for further proceedings.

### 3. **Credibility Assessments**

The Tenth Circuit Court of Appeals recently restated the salient points a court must consider when reviewing credibility determinations:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The Court also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that

>are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

As to Mr. Fulton's credibility, the ALJ stated:

>After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

AR 26. The ALJ's credibility determinations were based primarily on the infrequent treatment records during a period when Mr. Fulton had no medical insurance and could not afford to buy medication. As discussed above, however, the limited treatment records dated before 2008 do not necessarily support a conclusion of exaggerated allegations of pain.

The ALJ stated that the testimony of Mr. Fulton's wife was "questionable" because she "is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." AR 26. As Mr. Fulton points out, however, his wife's testimony was not intended to be medical evidence, but rather her observations of his limitations.

On remand, the ALJ will be required to make a new credibility assessment of any witnesses, and will have the opportunity to apply the factors set forth above to the testimony of Mr. Fulton. For that reason, further consideration of credibility issues is unnecessary.

### B. The ALJ's Step Five Findings

Based primarily on his marked limitations in social functioning, Mr. Fulton challenges the ALJ's step five finding that he could perform the jobs identified by the VE. Mr. Fulton notes that the Dictionary of Occupational Titles (DOT) describes the job duties of apparel stock clerk as requiring some contact with the public such as encountering retail customers in dressing rooms while gathering and counting garments the customers have tried on. *See* DOT § 299.667-014, 1991 WL 672642. The job of motel housekeeper also requires some contact with the public such as rendering personal assistance to patrons. *See* DOT § 323.687-014, 1991 WL 672783. The small products assembler jobs generally involve close contact between the employees, who frequently work at a bench as members of assembly groups, each of whom perform a particular task and then pass the product along to the next worker. *See* DOT §706.684-22, 1991 WL 679050. Mr. Fulton contends that such a job requires more than the incidental contact with other employees included in the ALJ's RFC. These points are well-taken. On remand, the Commissioner will have the opportunity to consider the jobs, if any, identified by a vocational expert and determine whether the job duties conflict with information in the DOT.

### RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by November  18th , 2011. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  28th  day of October, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE